436 SUPREME COURT OF WISCONSIN. [103

Valley Iron Works Mfg. Co. and another vs. Goodrick.

VALLEY IRON WORKS MANUFACTURING COMPANY and another,
Appellants, vs. GOODRICK, Respondent.

*April 4 — June 22, 1899.*

Contracts: *Specific performance: Patents and patent rights: Implied
contracts: Temporary injunction:* Ex parte *application.*

1. An action will lie to compel specific performance of a contract en-
titling a person to patents issued upon, and the right to manufac-
ture and sell machines embodying, the invention.

2. If an employee using the time, material, machinery, and assist-
ance of coemployees with his employer's consent, invent a ma-
chine and construct and put the same into practical use, and the
employer by the aid and with the consent of the inventor, in ad-
vance of an application for a patent on the invention, manufacture
and put machines embodying it into practical use, an implied con-
tract will arise from the facts, that the employer shall have the
right to manufacture at his factory and sell such machines, which
a court of equity will enforce; and if there be an express contract,
pursuant to which the invention is produced and the machine per-
fected by the aid of the employer, that he shall have all property
rights in the invention, a court of equity will compel specific per-
formance of such contract.

3. In an equitable action where the facts stated on behalf of the plaint-
iff may reasonably be sustained so as to entitle him to substantial
relief against the defendant, and the circumstances are such that
if the latter be unrestrained pending the litigation he may so deal
with the subject of the action or change existing conditions as to
render the final judgment nugatory, to the irreparable injury of
the plaintiff; notwithstanding a positive denial on the part of the
defendant of all the allegations of the complaint upon which plaint-
iff's right to equitable relief is based, it is the duty of the court, on
application therefor, to make such an order as will preserve the
*status quo* till the rights of the parties be settled in the action,
upon such terms as will protect the defendant against serious loss,
or require, by a proper bond or otherwise, protection to the plaint-
iff against damage by the acts of the defendant.

4. The doctrine, that where all the facts pleaded upon which plaintiff's
right to equitable relief is based are positively denied by the an-
swer a temporary injunction granted at the outset will be dis-
solved, does not apply where it is shown that the preservation of

Valley Iron Works Mfg. Co. and another vs. Goodrick.

the *status quo* pending the action is necessary to avoid the probability of plaintiff suffering irreparable loss and the final decree being ineffectual to accomplish the purpose of the litigation.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Appeal from an order dissolving a temporary injunction, granted *ex parte* on the complaint, stating, in substance, in addition to formal matters, that for several years defendant was the secretary, treasurer, and general superintendent, at a salary of $120 per month, of the plaintiff corporation, which was engaged in the business of manufacturing and selling machines for screening pulp and paper stock; that during such employment, using the time of the corporation, its material, machinery, and the labor of its employees with its consent, to the amount in value of several thousands of dollars, defendant investigated the subject of a new process for screening pulp and paper stock and the invention of a machine to put such process in practical operation, the efforts in that regard covering a period of about two years, which resulted, about September, 1897, in the discovery of such a process and the invention, perfection, and construction of such a machine; that the new device so discovered is patentable and of great value; that three of the machines were constructed at the factory of the corporation, two of which were sold to and put in operation by other parties, and one of which was put in operation by such corporation, all with the consent of defendant and by his aid at the expense of such corporation; that defendant has applied for patents in this and other countries and obtained one from Canada, and is about to obtain others; that the corporation consented to the use of its time, machinery, labor, money, and material, as aforesaid, with the understanding and agreement between the parties that the benefit of the discovery, including all patents granted thereon, and the right to manufacture and

Valley Iron Works Mfg. Co. and another vs. Goodrick.

sell machines embodying the invention, should be its property; that defendant now denies the corporation has any right, title, or interest, either in the invention or the right to manufacture or sell machines embodying the same, and will, unless restrained by the court, place such property beyond the reach of a decree of the court; that defendant is insolvent and unable to respond in damages for the aforesaid breach of his agreement and other breaches threatened; and that, unless he be restrained during the pendency of the action from selling the property to third persons and placing it beyond the reach of the mandate of the court, the corporation will suffer great and irreparable injury.

Defendant answered, admitting the formal allegations of the complaint, the discovery of the new process for screening pulp and paper stock, the invention of a machine as alleged, the value of the invention, the application for patents as claimed, the manufacture by the corporation, with the knowledge and consent of defendant, of two of the machines, one of which was sold by plaintiff; but denying that defendant discovered or invented the process or machine while in the employ of the corporation, or that it incurred any expense in that regard or in the manufacture of machines for defendant for testing his process, except one for which he paid in full. The refusal of defendant to recognize plaintiff as having any interest in the invention or the right to manufacture and sell machines embodying the same, was admitted, and it was alleged that the corporation had no such right. All the allegations of the complaint not specifically admitted or denied were covered by a general denial. The answer contained further allegations showing prima facie that the action was commenced without authority of the corporation.

On such answer and supporting affidavits, defendant moved the court to dissolve the temporary injunction. For such supporting affidavits there was one by defendant corrobo-

rating the allegations of his answer on all material points, and stating that after the action was commenced a meeting of stockholders of the corporation was held, at which a resolution was adopted directing its discontinuance. There was a further affidavit on the part of defendant, by A. B. Whitman, a stockholder and director, corroborating the affidavit and answer of defendant. In opposition to the motion was an affidavit by *William A. Fannon*, the receiver, named as plaintiff, who was also vice president of the corporation, to the effect that the action was commenced by authority of the president of the corporation who was duly authorized in the matter by the board of directors; that after such commencement, and before the proceedings of the special meeting of stockholders and the alleged action directing a discontinuance of the cause, the receiver was duly appointed in judicial proceedings and a temporary injunction granted restraining the corporation from doing any further business. The affidavit further corroborated the material allegations of the complaint, and showed that only a minority of the stock represented at the stockholders' meeting, aside from that owned by defendant, was voted in favor of discontinuing the cause. There was a further affidavit by A. L. Smith, the president of the corporation, corroborating all the allegations of the complaint and stating that the action was commenced by authority of the corporation.

On the case made by complaint and answer and the affidavits for and in opposition to the motion to dissolve the temporary injunction, such motion was granted, and this appeal was taken from the order.

For the appellants there was a brief by *Lyman E. Barnes* and *Henry D. Ryan*, and oral argument by *Mr. Barnes*.

For the respondent there was a brief by *Goodrick & Goodrick*, and oral argument by *A. B. Goodrick*.

The following opinion was filed April 25, 1899:

MARSHALL, J.  The complaint states, with reasonable clearness, facts constituting a good cause of action for specific performance of an implied contract, securing to the plaintiff corporation the right to manufacture at its factory, and sell in the market, machines embodying defendant's invention for screening pulp and paper stock; also facts entitling plaintiff to specific performance of an express contract securing to such corporation not only such right to manufacture and sell machines, but the patents issued, or that may be issued, for the invention.   Respondent's counsel suggest insufficiency of the complaint as one of the reasons for dissolving the injunction, and, in support of that, point out matters that might possibly be worthy of consideration on a motion to make more definite and certain, but not in testing the sufficiency of the complaint on demurrer or motion to grant or dissolve a temporary injunction.

Our attention is called to the fact that the language relating to the express contract relied upon, is that the corporation incurred several thousand dollars of expense in aid of defendant's discovery and the invention of his machine, and the construction of machines embodying such invention, with the understanding and agreement between *the parties* that the right to manufacture and sell such machines and the right to the patents that might be granted thereon should be its property, without stating who are the parties referred to, or definitely what the agreement was, or where it was made, or who represented the corporation in making it.   The meaning of the word "parties," when viewed in the light of the context, is easily discovered.   The only parties mentioned in the alleged transactions are the corporation and defendant, the parties to the action when the complaint was drawn.   "Parties," in the allegation, refers to the inventor, *Goodrick,* and his employer at the time the invention is said to have occurred, with as much certainty as if it were

alleged that the understanding and agreement was made
between plaintiff corporation and defendant *Goodrick*. There
is no difficulty in inferring from the allegations that the
corporation and defendant made an agreement to the effect
that if the former would contribute the use of its factory
and the necessary material and labor to aid the latter in his
investigations and experiments in the construction of his
machine, it should have as compensation therefor the owner-
ship of the results, both as to the right to manufacture and
sell such machines, and the patents issued on the invention.
True, as indicated, the allegations as to the agreement are
not so definite and certain as to be free from all criticism,
but criticism cannot reasonably go further than mere uncer-
tainty, subject to be reached by a motion, seasonably made.
The allegation that the discovery was made by defendant
and his machine invented and constructed while he was in
the employ of the corporation, and by the use, with its con-
sent, of its time, material, labor, and machinery, and that
machines were thereafter constructed at such factory with
defendant's aid and consent, some of which were put in
operation by plaintiff corporation and some sold to other
parties, makes a showing entitling the corporation to the
right, by implied contract, to manufacture at its factory and
sell such machines.  That is sufficient to support the com-
plaint, in connection with the allegations to the effect that
defendant refused to recognize the corporation as having
any such right.  The allegations that defendant, after some
two years of time, while working for the corporation at an
expense to it of several thousand dollars, produced his in-
vention, and that he entered upon the undertaking in that
regard, and the corporation incurred the expense indicated,.
on the faith of an understanding and agreement between
the parties that the result should be the property of the cor-
poration, make a showing entitling such corporation to sub-
stantially the relief prayed for in the complaint.  The

particular time when the agreement was made, or who represented the corporation in making it, or the particular place where the contract was made, were not necessary facts to be pleaded. Applying the rule that all reasonable intendments and presumptions are to make for the support of a pleading, and that if the language used will reasonably permit a construction that will sustain the pleading, having in view the evident purpose of the pleader, it should be adopted, there is no difficulty in reaching a conclusion that a cause of action is stated in the complaint entitling plaintiff to a decree of specific performance. *Kliefoth v. N. W. I. Co.* 98 Wis. 495; *Miller v. Bayer,* 94 Wis. 123. It is a well-established rule that an action in equity will lie to enforce specific performance of a contract to convey title to a patent, or the right to manufacture and sell machines embodying the invention; also that if a person, while in the employ of another, discover a patentable machine, and with the knowledge, consent, and assistance, and by the use of the time of such other, perfect the invention, and such other by consent of such person, in advance of any application for a patent on the invention, construct and use or sell machines embodying the invention, that will constitute an implied contract that such person shall have the right to manufacture such machines at its then existing factory and sell them upon the market, and such contract may be enforced by a court of equity. *Fuller & Johnson Mfg. Co. v. Bartlett,* 68 Wis. 73.

The cause of action for equitable relief being complete, and it being alleged that defendant is insolvent and that he will transfer to third persons property rights in his invention to the irreparable injury of plaintiff, unless restrained of his liberty in that regard during the pendency of the litigation, an interlocutory injunction to effect such restraint was properly granted.

The question is presented, Was the injunction properly dissolved on application of defendant based on an answer

denying unequivocally all of the allegations upon which the equitable relief sought depends, supported by affidavits to the same effect, such affidavits being opposed by affidavits on the part of plaintiff corroborating the case made by the complaint and alleging facts sufficient to show authority to bring the action; also showing that if plaintiffs' case be sustained upon the trial the decree will be rendered worthless by the conduct of defendant in the meantime, if free to dispose of the subject of the action, there being nothing to show that restraint of his liberty will work any serious harm to him, and no harm but such as can adequately be guarded against by a bond on the part of plaintiff? That was the situation that confronted the trial judge, and he met it by unconditionally dissolving the injunction, notwithstanding plaintiff gave a bond in the sum of $1,000 to save defendant harmless from any wrongful effects of the injunction in case the court should finally decide that he was not required to respond to the demand of the complaint.

The learned counsel for respondent, in justification of the order appealed from, invokes the rule that, where all the material allegations upon which the equities of the case rest are fully met and denied without evasion or equivocation by the answer and affidavits, the injunction will be dissolved. High, Injunction, § 1505. That rule is stated by this and other courts without qualification, so that, without familiarity with the scope and purpose of the powers of a court of equity, there is danger of too great reliance being placed upon it. This court has often applied the rule and said that it was one of general application. *Walker v. Backus H. Co.* 97 Wis. 160; *Tiede v. Schneidt,* 99 Wis. 201. Language is also often used consistent only with the theory that, in order to warrant the continuance of an injunction *pendente lite,* where all the alleged equities of the complaint are denied by the answer, plaintiff's right to the ultimate relief sought must be established. *Warsaw W. W. Co. v. Warsaw,* 4 App. Div.

509. That goes no further than that, as a general rule, where all the material allegations of the complaint are specifically denied, and they do not show clearly, in connection with the supporting affidavits, that plaintiff is entitled to the relief sought if his allegations are in accordance with the truth, the temporary injunction will be denied. The rule does not go so far as to compel the plaintiff to try his case on affidavits and the court to decide the issues in advance of a trial on the merits, in order to maintain an order preserving the subject of the action and protecting the plaintiff from probable injury from the conduct of his adversary in advance of a final decree. If such were the case, it would be very easy to paralyze the arm of equity and destroy its power to effect justice in a multitude of cases. Notwithstanding the denial by the defendant of all the equities of the bill, there still remains, generally, the probability that plaintiff may ultimately be entitled to the relief prayed for. Just where the truth lies cannot be told till a trial of the case on the merits, hence the necessity of a power to preserve the *status quo* pending the litigation, if that be necessary to make the final decree effective to do justice between the parties. It is more accurate and less liable to mislead, to state the rule, in regard to dissolving a temporary injunction on the coming in of an answer, with this qualification, which is universally recognized in judicial administration: notwithstanding the direct conflict between the adversary parties as to the facts upon which the right to the equitable relief prayed for is sought, it is still within the discretionary power of the court, by a temporary injunction, to preserve the *status quo* between the parties pending the final decree, if that be necessary in order to make such decree effective or to save the person claiming relief from irreparable injury by the conduct of his adversary pending the litigation. The whole subject of granting or refusing interlocutory injunctions rests in the sound discretion of the court. A mere

Valley Iron Works Mfg. Co. and another vs. Goodrick.

denial of all the equities of the bill does not under all cir-
cumstances take from the court its discretionary power to
grant or continue a temporary injunction; neither does a
case, showing that plaintiff, if he recover, may suffer irrep-
arable loss and the very object of the suit be defeated in
the absence of a temporary injunction, entirely deprive the
court of all discretionary power to deny such injunction.
But there is some limit to judicial discretion in such cases,
both in denying and dissolving injunctions, which, if passed,
becomes mere arbitrary judicial will regardless of that wis-
dom essential to the judicial function, in order to render
equity power the effective instrument of justice that it is
supposed and designed to be.

On principle and authority, where there is a clear case
made by the complaint for equitable relief, supported by
affidavits,— notwithstanding a direct conflict between such
complaint and affidavits and the answer and affidavits on
the part of the defendant, if it be reasonably probable that
plaintiff may finally recover, and on account of the insolv-
ency of the defendant or some other cause the object of the
action, notwithstanding the final decree in plaintiff's favor,
may probably be defeated or he be made to suffer irreparable
injury if defendant be left unqualifiedly at liberty to deal
with the subject of the action pending the litigation,— it is
not only within the discretionary power of the court to make
some reasonable provision against such a contingency, but
on a proper application in that regard it is the judicial duty of
the presiding judge to do so.    Just what provision should
be made must necessarily be governed by the particular facts
and circumstances of each case, but to refuse to act at all in
such a situation, when action is requested, is in effect to de-
cide the litigation against the plaintiff in advance of a trial.
Our judicial system has no such weakness as to lead to that
result, though certainly it would be otherwise if it were the
unqualified rule, even that the court has the discretionary

Valley Iron Works Mfg. Co. and another vs. Goodrick.

.power to refuse to preserve, by temporary injunction, the *status quo* between parties pending the entry of a final decree determining their rights.

Obviously, the court should act with care in such cases. The inconvenience to parties, and sometimes to those not directly parties, to the cause, must be considered. Sometimes restraint upon a defendant may cause to him great inconvenience and damage in case he recover finally, and the refusal of such restraint very little inconvenience or damage to the plaintiff in case of his recovery, and *vice versa.* In some circumstances it may be found consistent with judicial wisdom to grant a restraining order upon plaintiff's giving such bond to protect the defendant as may appear necessary in any reasonable view of the case; in others to refuse such order on defendant's giving adequate security to protect plaintiff, in view of any probable future situation as to him, down to and inclusive of the final decree. No power of the court is more necessary to the proper and efficient administration of justice, and none more easily abused or dangerous if not exercised with judgment, than the power of injunction. It should never be exercised in any case where the liberty of a person is thereby liable to be interfered with in a serious manner and to his irreparable injury, except with thoughtfulness and judgment as to the probabilities in that regard, and upon such notice and terms as may reasonably be required to protect both parties against ultimate wrongful injury or damage.

Applying the foregoing to this case, it is quite clear that the granting of the order appealed from, dissolving the temporary injunction, was error, and that it must be reversed. The learned trial court evidently gave too great weight to the rule that, where all the equities of the bill are denied, a temporary injunction should be dissolved. The qualification of that rule, that, notwithstanding the conflict between complaint and answer, the injunction *in limine* should be

Valley Iron Works Mfg. Co. and another vs. Goodrick.

retained or some other adequate provision made by way of security where it is clear that such a course is necessary to protect the plaintiff from serious loss in case of the establishment of his cause of action on the trial, was either not comprehended or overlooked. To retain the temporary restraining order, or require security as terms of dissolving the injunction, is only to preserve the property forming the subject of the action *in statu quo* and prevent substantial damage to any one whatever. may be the final outcome. The refusal to do it in this case might inflict irreparable loss upon the plaintiff corporation and render the litigation useless. As before indicated, the existence of the power to grant temporary injunctive relief is for the very purpose of avoiding such a danger. The exercise of the power in a case clearly calling for it is as necessary as the existence of the power itself, therefore judicial discretion in such a case can act in but one direction without abuse. As said, in substance, by Circuit Judge SANBORN, in *Newton v. Levis*, 79 Fed. Rep. 715, though the granting or withholding of a preliminary injunction rests in the sound judicial discretion of the court, if by reason of the refusal to issue the injunction, the final decree, if it should be in favor of the plaintiff, will be utterly nugatory, and he left remediless for his injury, there is no question as to the duty of the chancellor to issue it, or in some proper way to guard against such a result. It is so recognized by courts generally in their administration, but accompanied so often by language to the effect that when all the equities of the bill are denied the temporary injunction will be dissolved, as to carry the idea that the court has no discretionary power to do otherwise.

*By the Court.*— The order appealed from is reversed.

A motion for a rehearing was denied June 22, 1899.