EAU CLAIRE DELLS IMPROVEMENT COMPANY and another, Appellants, vs. CITY OF EAU CLAIRE, Respondent.

*January 31—February 18, 1908.*

*Appeal and error: Questions considered: Temporary injunction: Sufficiency of motion papers: Equity: Contracts: Forfeiture for breach of condition subsequent: Declaration of forfeiture: Review.*

1. In reviewing the action of the circuit court in passing on the propriety of a temporary injunction the sufficiency of the complaint will be assumed if a fair doubt of law or of fact as to plaintiff's ultimate right to recover is presented.

2. A court of equity will not as readily exercise its power or grant as full relief after forfeiture at law for the breach of a condition subsequent as before the forfeiture has been accomplished, and hence, where the purpose of an action is to establish the rights of plaintiff in a contract, to prevent the declaration of a forfeiture of those rights, and to prevent the enforcement of a forfeiture if declared, the uncertainty as to the power or willingness of a court of equity to grant such relief after the declaration of the forfeiture as before, affords a reason for maintaining the existing situation until the final hearing and enjoining the declaration of the forfeiture.

3. While in granting a preliminary injunction the court should go no further than necessary to preserve and protect existing rights pending the litigation, yet, if it appears that the declaration of a forfeiture pending litigation will render futile in a measurable degree the relief sought by the plaintiffs or cause them serious or irreparable injury, a preliminary injunction should be continued, especially if no considerable damage is to be occasioned to the defendant.

4. Where the threatened action of a common council consisted in declaring the forfeiture of a contract, it relates to contractual rights and is subject to the control of the court.

5. Where an order modifying a preliminary injunction was based on a mistaken view of the law, the trial court's action is properly subject to review on appeal, and, if it appears that the ends of justice will best be served by maintaining the *status quo* of the parties pending the litigation, the temporary injunction as originally issued will be continued in force until the final hearing.

APPEAL from an order of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

This is an appeal from an order vacating a portion of an interlocutory injunction. The motion for such order was heard on the complaint, answer, and affidavits. The plaintiffs, among other things, seek to enjoin the defendant, pending the litigation and permanently, from effecting a forfeiture of their rights under a certain contract for the construction, maintenance, and operation of a dam across the Chippewa river in the city of *Eau Claire* during the term of ninety-nine years from February 17, 1877, and from interfering with their possession and use of such dam and works;

to be relieved from such grounds of forfeiture, if any, as may exist, before any forfeiture has been declared; to have opportunity given them to perform such contract in any respect wherein they may be found to be in default; and to have certain disputed questions respecting the rights of the parties under said contract ascertained and determined. The defendant seeks relief adjudging that such contract was and is void and that the defendant is presently entitled to the possession and use of such dam and works. A temporary injunction in accordance with the prayer of the complaint having been granted, the defendant, upon the pleadings and an affidavit of the city attorney, obtained an order requiring plaintiffs to show cause why such injunction should not be wholly vacated. The issues on such hearing were whether the complaint stated facts entitling the plaintiffs to the permanent relief which they seek, and whether the doing by the defendant *pendente lite* of any of the acts temporarily enjoined would injure the plaintiffs or tend to render such judgment as they were entitled to ineffectual. Upon the hearing the circuit court made an order vacating so much of such temporary injunction as restrained the defendant from declaring a forfeiture of the contract or lease described in the complaint, but continued in force the injunction restraining the defendant from enforcing any forfeiture that might be declared. The plaintiffs claim that the modification of the interlocutory injunctional order was erroneous.

The complaint, after describing the parties, makes reference to ch. 231, Laws of 1876, authorizing the construction of the dam, and the acts amendatory thereof. That act authorizes the city of *Eau Claire* to construct waterworks, and for that purpose to maintain a dam not exceeding sixteen feet in height above low-water mark across the Chippewa river; to construct aqueducts and mains; to acquire all machinery, works, and appendages necessary or proper for the successful construction and operation of such waterworks and

of works to be constructed above and below such dam for protecting and preserving the navigability of said river. The act further provided that the dam should contain a lock for the passage of steamboats and rafts of lumber; that the same should be operated free from tolls; that the dam should contain separate and sufficient chutes and slides for the passage of logs, timber, etc.; that in case the dam authorized should create any water power not continuously needed to propel the machinery and to supply the mains connected with said waterworks, or to preserve the navigability of the river, the city might lease the same or any part thereof for manufacturing or other purposes, and also lease the piers and other structures for any use or purpose which should not materially obstruct the navigability of the river or interfere with the successful operation and maintenance of the dam and works authorized; that the city should be liable for damages sustained by reason of the insufficiency of any of the works authorized or by reason of unreasonable delays or detentions suffered on account of the manner of operating the same, and for all damages suffered by reason of negligence of agents or employees of the city in operating the same. The amendatory acts authorize the maintenance of the dam at a height not exceeding eighteen feet above low-water mark, and also authorize the city to grant by contract or ordinance to any person or corporation the right and authority to construct for themselves and own the waterworks provided for and to maintain and operate the same. The complaint further alleges that on February 17, 1877, the city was and ever since has been unable to construct said dam, works, and improvements at its own expense, and that the only method by which this could be accomplished was by contracting with some person or corporation for the construction of the same, and that upon said date the city entered into a contract with one of the plaintiffs, which may be designated as the *Improvement Company,* which contract is set out in the complaint. By this

contract the *Improvement Company* undertook to construct the dam, the lock and chutes and slides, and such piers and booms as should be requisite to protect and preserve the navigability of the river, as prescribed in the act of the legislature. The *Improvement Company* further undertook to construct and operate certain other works and facilities for the maintenance of power for the operation of the waterworks and to contribute certain money to aid in the purchase of machinery for waterworks. The city agreed, among other things, to turn over to the *Improvement Company* its bonds to the amount of $95,000, and further agreed, in consideration of the performance by the *Improvement Company* of its covenants, which were declared to be a condition precedent, to lease for a term of ninety-nine years, for the purposes mentioned, the interest of the city in the surplus water power created by the dam and not required for waterworks purposes for the nominal rental of one dollar per year, the lease to be executed and delivered within thirty days after the completion of the works and on demand of the company. The contract provided what the lease should contain with respect to the navigability of the river and the supply of water for the operation of the waterworks, and that it should "maintain and operate all of said works so constructed by it, in strict accordance as the same are authorized to be maintained and operated by said city by said act of the legislature and not otherwise," and that it should not assign said lease or underlet the whole of the premises without the consent of the city. The provision of the contract under which the city claims the right to declare a forfeiture is as follows:

"And it is further mutually covenanted and agreed, by and between the parties hereto, that in case of the nonpayment of said rent whenever and as fast as it becomes due, or in case of the noncompliance with said conditions precedent, or in case of the nonperformance by said second party of any of the covenants or agreements hereinbefore contained on its

part to be performed, then in that case the said city of *Eau Claire,* its attorney or assigns, shall, after giving thirty days' notice of such default to said second party or any of its principal officers, if such default then continues, have the full right to vacate this lease and declare all the provisions, terms, and conditions thereof null and void, whereupon the said lessee shall yield up to the said lessor, its attorney, agent, or assigns, full, quiet, peaceable, and immediate possession of the said premises and rights hereby leased, anything herein contained to the contrary notwithstanding."

It is alleged that the lease provided for in the contract was never executed, but that both parties have treated the contract as embodying the terms of the lease. It sets forth the construction and maintenance of the dam and works at an expense of over $200,000, all of which was paid by the *Improvement Company* except the contribution by the city of $95,000 of bonds; that it has paid the annual rentals stipulated for; and that it has maintained the dam, works, and improvements at great cost and expense, and has recently expended large sums of money in repairing and improving the same.

The complaint alleges that at the time the construction of the dam was authorized and ever since it has been the general custom in this state to use flashboards on dams to control and regulate the water thereby accumulated, and that it was necessary for the proper management of said dam and water power created thereby that such flashboards should be used, and that for more than twenty years prior to the commencement of this action such flashboards have been maintained at a height of from four to six feet above the crest of said dam, and for several years prior to the commencement of this action such flashboards have been maintained at the height of eight feet, and that it is necessary that the flashboards now being used should be maintained in order to furnish the necessary supply of water for the operation of the waterworks for said city and to supply the necessary water for the other uses contemplated in the contract. Facts are

set forth which it is claimed show the consent and acquies-
cence of the city in the use of such flashboards. The com-
plaint alleges that the Chippewa river is no longer used for
the purposes of navigation, and that after the navigation of
the river by steamboats and lumber rafts had ceased the *Pulp
Company,* one of the plaintiffs, being an assignee of the *Im-
provement Company,* with the consent of the city constructed
one of its mills over the lock at great expense, and has since
maintained the same with the consent of said city. It is al-
leged that the use of said flashboards has not caused any in-
jury to the city or to any person, and that their discontinu-
ance would be of no benefit to anybody whatever, but on
the contrary such discontinuance would cause great dam-
age to the parties especially interested; that the use of
said mill and machinery in and over said lock causes no
damage to said city or to any other person, but that the
removal of the same would cause great loss and damage
to said *Pulp Company;* that it is not possible within the
period of thirty days to build another lock in said dam,
but that such lock could be constructed at great loss and
expense, but that when constructed no use could be made
thereof. It is further alleged that the city, by the construc-
tion of bridges below said dam, has effectually obstructed
any navigation upon the stream which would render the
lock necessary. The complaint charges the adoption by
the common council on August 1, 1906, of a resolution,
thereto attached, directing service upon the *Improvement
Company* and all claiming under it of a certain notice, which
notice sets out the breach of the contract in substance as fol-
lows: That the dam has been maintained many feet above the
authorized height; that the lock has been converted to private
use and its use for navigation destroyed; that sufficient chutes
and slides have not been maintained; that the dam has been
so changed and altered as to materially obstruct navigation;
that the surplus water has been misapplied and appropriated

to uses and to the benefit of persons not authorized by the contract; that the land of the city adjacent to the river has been appropriated to private uses; that the *Improvement Company* has become irresponsible and practically defunct. The notice, in pursuance of the terms of the contract, after reciting the breaches complained of, contains the following language: "And that the continuance of such default for thirty days after this notice will give the said city the full rights in the said contract provided in such case, which will then be exercised and enforced." The complaint further charges the service of the above notice on August 4, 1906, that the regular meeting of the council would be held September 5, 1906, and that it was the intention of the common council at such meeting to adopt a resolution purporting to vacate the contract of February 17, 1877, and declare its provisions void and forfeiting the interest of the plaintiffs in the property. The complaint alleges "that such action on the part of the officers of said city and its common council would greatly injure and impair the property, rights, and interests of the plaintiffs and each of them, would create a cloud upon their title to their respective properties, and would cause the plaintiffs irreparable loss, damage, and injury."

The relief prayed in the complaint is in substance that the contract of February 17, 1877, be adjudged valid; that defendant be required to execute a formal lease pursuant to the contract as modified by subsequent agreements or acquiescence of the parties; that it be adjudged that the use of the flashboards and the closing of the lock were not a breach of the contract; that, if determined to be a breach, it be adjudged that the breach has been waived; that, if adjudged that the breach has not been waived, "the plaintiffs be relieved from such forfeiture and grounds of forfeiture in such manner and subject to such conditions as the court shall determine;" "that the rights of all parties interested in the

maintenance of said dam, and the use of the hydraulic power made available thereby, shall be ascertained and determined;" and that the rights of the plaintiffs be quieted—together with a prayer for the temporary and permanent enjoining of the city from declaring or enforcing a forfeiture.

The answer puts in issue the allegations of the complaint as to the construction and validity of the contract, and as to the waiver by the city particularly denies any waiver of the breach of the contract arising from the closing of the lock and from the use of flashboards, asserts that the closing of the lock and use of the flashboards is unauthorized and illegal, and contains averments showing that the use of the flashboards is not necessary to any public use, but that they serve only the private purposes of the plaintiffs, and alleges facts tending to show that the breaches of the contract by the plaintiffs are destructive of navigation and operate to the great injury of the city and jeopardize the lives and property of its inhabitants. The answer expressly denies that the city has, by its officers or otherwise, threatened to or will take possession of the said dam, water power created thereby, structures or works therewith used and connected, or any property of said plaintiffs or either of them, until such time as the proper court shall have decreed that the defendant city is entitled thereto, and denies that it is about to or will hinder or prevent the furnishing of water power for the operation of the waterworks in said defendant city for municipal or other purposes. The answer prays that the preliminary injunction be dissolved, that the contract of February 17, 1877, be adjudged invalid, and that the defendant be adjudged to be entitled to the ownership and possession of the dam and its appurtenances, with a prayer for general relief.

The affidavits presented by the respective parties go in corroboration of said allegations contained in the complaint or the answer, and their contents are not material to the questions involved on this appeal. The interlocutory injunc-

tional order was based· on the verified complaint and was issued *ex parte* by a court commissioner, and in substance restrained the defendant, first, from declaring, by ordinance or otherwise, and from doing any act for the purpose of declaring, the forfeiture of the contract; second, from taking possession, or interfering with plaintiffs' possession, of the dam and water power. Upon the hearing in the trial court, as appears from the opinion of the lower court, the city did not seek to modify the latter part of the injunction, preventing the city from enforcing a forfeiture. The city merely asked the vacation of that part of the order which prevented it from declaring the forfeiture, and such is the scope of the order modifying the injunction and now before this court for review.

For the appellants there were briefs signed by *Ruger & Ruger* for the *Eau Claire Dells Improvement Company* and by *Wickham & Farr* for the *Dells Paper & Pulp Company,* and the cause was argued orally by *James Wickham* and *William Ruger.*

For the respondent there was a brief by *A. C. Larson,* attorney, and *Olin & Butler,* of counsel, and oral argument by *Mr. Larson* and *Mr. H. L. Butler.*

BASHFORD, J.   The sole question before the court on this appeal is the assigned error of the trial court in vacating that part of the preliminary injunction which restrained the defendant from passing any resolution or ordinance declaring the contract set forth in the complaint to be null or void, and from doing any act for the purpose of declaring said contract, or the rights of the parties acquired thereunder, to be canceled or forfeited. The pleadings present issues of law and fact, the final determination of which must be attended with serious and far-reaching consequences to the parties concerned. The court must, upon final hearing, decide upon the validity of the contract and its proper interpretation, and

upon the power of the city of *Eau Claire* over the subject matter and its alleged waiver of the breaches of the contract. These questions are not before the court for adjudication upon the record and they are left open for future consideration without any intimation as to their final determination. Counsel for the respondent correctly states, as the rule adopted by this court, that in passing upon the propriety of a temporary injunction the sufficiency of the complaint will be assumed, if a fair doubt of law or fact as to plaintiffs' ultimate right of recovery is presented. *Milwaukee v. Gimbel Bros.* 130 Wis. 31, 34, 110 N. W. 7. The same counsel further states that the determination of the sufficiency of the complaint upon this record might rather embarrass than aid the parties in the final trial of the cause upon the merits, and also states that the order of the circuit court modifying the temporary injunction was made upon the assumption that the complaint was sufficient. We shall therefore assume the sufficiency of the complaint in determining the question presented on this appeal.

The purpose of the complaint is to establish the rights of the plaintiffs in the contract and to prevent the declaration of a forfeiture of those rights, and to prevent the enforcement of a forfeiture if declared. To prevent the declaration of the forfeiture is one of the substantial grounds for relief set forth in the complaint, and, if the defendant is permitted to make the declaration in advance, one of the principal objects of the suit will have been defeated. The contention was made on behalf of the appellants that a court of equity will not as readily exercise its power or grant as full relief after forfeiture at law for the breach of a condition subsequent as before the forfeiture had been accomplished. In this connection a quotation is made from *Maginnis v. Knickerbocker Ice Co.* 112 Wis. 385, 88 N. W. 300, in which it is claimed this distinction is recognized. If there is any uncertainty as to the power or willingness of a court of equity to grant as

complete and efficient relief after the declaration of the forfeiture as before such declaration, that would afford an additional reason for maintaining the existing situation until the final hearing. The rights asserted on behalf of the plaintiffs and controverted by the defendant are of contractual character and properly subject to the control of the court, and the stay of the threatened action of the defendant pending litigation cannot embarrass any proper defense asserted by it in the answer.

It is urged on behalf of the respondent that the facts presented upon this record do not show that the declaration of a forfeiture by the city would cause the plaintiffs irreparable injury. The rule is well settled that the court, in granting a preliminary injunction, will go no further than necessary to preserve and protect existing rights pending the litigation. *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 510, 83 N. W. 851. But if it appears that the declaration of a forfeiture pending litigation would render futile in a measurable degree the relief sought by the plaintiffs or cause them serious and irreparable injury, then the preliminary injunction should have been continued, especially if no considerable damage is to be occasioned to the defendant. *De Pauw v. Oxley,* 122 Wis. 656, 100 N. W. 1028; *Milwaukee E. R. & L. Co. v. Bradley,* 108 Wis. 467, 84 N. W. 870. It cannot well be claimed that the defendant will suffer any material injury from the continuance of the injunction pending the litigation, while it does appear that the rights of the plaintiffs, as already indicated, might be seriously jeopardized by the threatened action of the defendant which is sought to be permanently enjoined by the judgment of the court. It is also urged on behalf of the plaintiffs that the declaration of a forfeiture and the assertion of claim to the property by the defendant would greatly injure their rights and interests and would create a cloud upon their title to their respective properties and cause them irreparable loss, damage, and in-

Eau Claire Dells Imp. Co. v. Eau Claire, 134 Wis. 548.

jury. It sufficiently appears from the complaint that such would be the probable consequence of the threatened action to business enterprises of this character.

The general rule as to the power and duty of the court in granting preliminary injunctions applicable to the present situation is carefully considered and accurately stated in *Valley Iron Works Mfg. Co. v. Goodrick,* 103 Wis. 436, 78 N. W. 1096, where the order of the circuit court dissolving a temporary injunction was reversed. The fourth headnote, concisely embodying the principle, is as follows:

"The doctrine, that where all the facts pleaded upon which plaintiff's rights to equitable relief is based are positively denied by the answer, a temporary injunction granted at the outset will be dissolved, does not apply where it is shown that the preservation of the *status quo* pending the action is necessary to avoid the probability of plaintiff suffering irreparable loss and the final decree being ineffectual to accomplish the purpose of the litigation."

We conclude that the threatened action of the common council related to contractual rights and was subject to the control of the court; that, as the order modifying the injunction was based upon a mistaken view of the law, it is properly subject to review on appeal; that the ends of justice will best be subserved by maintaining the *status quo* of the parties pending the litigation; and that the temporary injunction as originally issued should be continued in force to the final hearing.

*By the Court.*—The order appealed from is reversed, leaving the original temporary injunctional order in force.